## Case No. 6,721.

### HOUGH v. FIRST NAT. BANK.

[4 Biss. 349.][1]

District Court, D. Indiana. June, 1869.

#### BANKRUPTCY—PREFERENCE.

1. A few days before an adjudication of bankruptcy, the defendant, a creditor by note of $1000, aware of the insolvency of the bankrupts, and having in the bank a general deposit

3 [From 7 Chi. Leg. News, 65.]
1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

of $772, previously made by the bankrupts, received from them a check for said amount, deposited and applied the same on the note in satisfaction of $772 thereof, and at the same time received from the bankrupts $228 in payment of the residue of the note. *Held*, that the transaction as to the check on the deposit was a mere adjustment of mutual debts, and not a fraudulent preference within the meaning of the bankrupt law [of 1867 (14 Stat. 517)].

[Applied in Robinson v. Wisconsin, M. & F. Ins. Co. Bank, Case No. 11,969.]

2. The receipt of the $228 by the bank in payment on the note was a fraudulent preference; and the assignee was entitled to recover it back from the bank.

[This was a suit by John Hough, assignee in bankruptcy, against the First National Bank of Ft. Wayne, to recover certain money paid with intent to give illegal preference.]

Porter, Harrison & Fishback, for plaintiff.
Morris & Gordon, for defendant.

McDONALD, District Judge. This is an action of assumpsit. The plaintiff sues as an assignee in bankruptcy. The substance of the case made by the declaration is, that in May, 1868, a few days before the parties represented by the plaintiff were adjudged bankrupts, and being indebted to the defendant in the sum of one thousand dollars, they paid this debt to the defendant with intent to give the defendant a preference over their other creditors; and that the defendant received this payment knowing that the bankrupts were then insolvent, and in fraud of the bankrupt law. The object of the suit is to recover back the money thus paid. The defendant has pleaded the general issue, and the parties, waiving a jury, have submitted the issue to a trial by the court.

The facts in proof are substantially these: The bankrupts had executed a note of one thousand dollars, payable at the banking house of the defendant, on the 15th of May, 1868. The note was payable to the order of a third person, who had indorsed it in blank, and thus perfected, it was negotiated to the defendant. By the law, the note had days of grace, the last of which was May 18, 1868. On the 15th of that month the bankrupts had a general deposit in the defendant's bank to the amount of seven hundred and seventy-two dollars. On that day an officer of the bank requested them to pay this money to the bank on said note. The bankrupts thereupon delivered to the officer a check on the bank for the amount of their deposit; and this was credited on the note. A few days afterwards and before the adjudication of bankruptcy (which occurred on the 27th of May, 1868), the bankrupts paid to the defendant two hundred and twenty-eight dollars, the residue of the note. At the time of these transactions, the officers of the bank well knew that the bankrupts were insolvent. And from their conduct it is evident that the officers of the bank demanded the application of said deposit to said note on

its first day of grace, under an apprehension that if it was delayed till the third, other creditors of the bankrupts would obtain the deposit in the meantime.

Such is the evidence. Is it sufficient to justify a finding for the plaintiff? The 35th section of the bankrupt law provides that, if any person, being insolvent or in contemplation of insolvency, shall, with a view to give preference to any creditor, make any payment to such creditor within four months next before the filing of a petition by or against such person in bankruptcy, the creditor receiving the payment, having at the time reasonable cause to believe such person to be insolvent, shall be liable, in an action by the assignee, for the amount of the money so paid.

Under this provision of the law, there can be no doubt of the liability of the defendant for the two hundred and twenty-eight dollars, paid on the note as aforesaid. For, as to this amount, the evidence brings the case both within the letter and spirit of the law.

But as to the seven hundred and seventy-two dollars credited on the note, there is much more doubt. If, in substance, this was a payment, the bank is liable to repay it to the assignee. But if it was substantially merely an adjustment of mutual debts, the bank is not liable.

The 20th section of the bankrupt act declares that in all cases of mutual debts or mutual credits between the bankrupt and his creditors, the account shall be stated, and one debt set off against the other, and the balance only shall be allowed or paid. This the law allows to be done after the debtor has been adjudged a bankrupt. And if the adjustment may be made after the adjudication, surely it may lawfully be made before. The only question, therefore, is, was the checking on the deposit in the bank and the crediting of the amount on the note in substance such an adjustment, or must it be regarded as a payment? I think it was not, either technically or virtually, a payment; and I think that in substance it was an adjustment of mutual debts. The bankrupts owed by note a debt of one thousand dollars to the bank. By the general deposit, the bank owed a debt of seven hundred and seventy-two dollars to the bankrupts. These were in every sense "mutual debts." The operation, performed by means of a check on the bank and the credit entered on the note, whatever the parties may have called it, was really and virtually nothing more nor less than setting off the deposit of seven hundred and seventy-two dollars against that amount of the debt evidenced by the note. It was not, therefore, in any legal sense a payment, but a set-off. And if so, was it any violation of the bankrupt law? We have already seen that such a set-off may lawfully be made after the adjudication of bankruptcy. And there can be no doubt that, even without the act or consent of the

parties concerned, the court should, in such a case, itself decree the set-off. Consequently the transaction in question could not have been unlawful.

We may test the legality of this matter in another way. Suppose that the adjustment of these debts had not been made till after the adjudication of bankruptcy, we have seen that by the very words of the act it could then be made. And the result would be exactly the same in either case. Shall the court condemn a man for doing what the court itself does?

Again, whom does this arrangement of these mutual debts injure? The gravamen of the present action is a supposed fraud effected by the attempt to give a preference to the defendant over other creditors of the bankrupts. Now, there can be no fraud without an injury. But if this transaction had never happened, and these mutual debts had remained in statu quo till the debtors were adjudged bankrupts, then, as we have shown, the court would have applied this seven hundred and seventy-two dollars on the note of one thousand dollars by way of set-off precisely as the parties have done; and the assets to be distributed among the creditors would have been exactly the same as they will be if we allow the transaction under consideration to be valid. In either case, the distributive share of each creditor will be precisely the same, consequently, no creditor can be injured by the transaction, and no fraud can be perpetrated by it.

It has been urged that this transaction cannot be a set-off of mutual debts, because the note was not due at the time. By the face of the note it was due on the very day on which the check was drawn. But it was governed by the law merchant; consequently, it had three days of grace, and was not demandable till the third day thereafter. But the note was mature on the first day of grace; and the makers had the right on that day to settle or pay it. And they did settle it by way of part payment and part set-off on that and a subsequent day.

Moreover, since by the statute of Indiana a debt may be set-off though it matures after action brought, it is certain that in any action brought by the assignee against the bank for the deposit, the bank might have pleaded the note as a set-off; so that in no event could this deposit have become assets in the hands of the assignee, even though the adjustment of these debts had never been made by the parties. But I do not concede that if the note had not matured, the adjustment would have been unlawful as preferring a creditor.

With this view of the case, I cannot find that the bank ought to refund the seven hundred and seventy-two dollars which it held on deposit. But as to the two hundred and twenty-eight dollars, that was a payment, and nothing else; and it plainly gave the bank a preference in violation of the law.

I must therefore find that sum with interest against the bank. Accordingly, I find the issue for the plaintiff, and assess his damages at two hundred and twenty-eight dollars and interest.

NOTE. A depositor in bank may, before its bankruptcy, have his deposit credit set off against his indebtedness as indorser upon a note held by the bank and duly protested. If the parties before bankruptcy do what the law allows, and the indorser take up the note, it cannot be recovered against him. Winslow v. Bliss, 3 Lans. 220.